UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERNESTINE (MOORE) GARZA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| FRANCES L. KELLY, individually and officially as the Executive Director of the Indiana Professional Licensing Agency, SEAN GORMAN, individually and officially as the Director of the Indiana State Board of Nursing, ALBERT BARCLAY WONG, individually and as a Deputy Attorney General of the State of Indiana and DARREN R. COVINGTON, individually and as a Deputy Attorney General of the State of Indiana | ) ) ) ) ) ) ) ) ) ) )  No. 1:12-cv-00618-SEB-DKL |
| Defendants. | |

**ORDER GRANTING MOTION TO DISMISS**

This cause is before the Court on a Motion to Dismiss [Dkt. No. 42] filed by Defendants Darren Covington, Sean Gorman, Frances Kelly, Albert Barclay Wong. Plaintiff Ernestine Garza opposes the Motion. For the reasons detailed herein, the Defendants' Motion is GRANTED and all claims are DISMISSED WITH PREJUDICE.

**Factual Background**

Plaintiff Garza is a licensed registered nurse in the State of Indiana. The Indiana State Board of Nursing ("ISBN") and the Indiana Professional Licensing Agency ("IPLA") are administrative agencies of the State of Indiana empowered by statute to discipline registered nurses in Indiana as well as to issue, renew, deny, or revoke their licenses.

Defendants brought an administrative action against Plaintiff alleging that she had violated provisions of Indiana Code 25-1-9-4(a)(1)(A) and (B).[1] A hearing was conducted in this action on April 15, 2010, at which Plaintiff represented herself. Defendants Covington and Wong, both Deputies Attorney General, represented the ISBN and the IPLA in the hearing, offering evidence against Plaintiff in the form of complaints made by former employers.[2] Plaintiff alleges that Defendants "purposely and intentionally used discredited hearsay evidence at the hearing which should have been barred on Plaintiff's objection, used schemes or artifices of existing rules of evidence during the hearing, then prevented the review of the final decision provided for at I.C. 4-21.5-3-7(e) and I.C. 4-21.5-3-31(a) to the Plaintiff's detriment."[3]

---

[1] (a) A practitioner shall conduct the practitioner's practice in accordance with the standards established by the board regulating the profession in question and is subject to the exercise of the disciplinary sanctions under section 9 [IC 25-1-9-9] of this chapter if, after a hearing, the board finds:

 (1) a practitioner has:

  (A) engaged in or knowingly cooperated in fraud or material deception in order to obtain a license to practice, including cheating on a licensing examination;

  (B) engaged in fraud or material deception in the course of professional services or activities;

[2] Following Plaintiff's termination by these employers, she alleges that she sought and received unemployment compensation from the Unemployment Insurance Review Board. The same statements from the former employers offered against her in the disciplinary hearing were presented in those proceedings but did not convince the Unemployment Insurance Review Board that Plaintiff was not entitled to unemployment compensation. None of these former employers sought to appeal the decision to issue unemployment compensation to Plaintiff. Several allegations in Plaintiff's Complaint allude to her belief that the decision made by the Unemployment Insurance Review Board should have had some preclusive effect on the disciplinary hearing and that the Defendants should have been aware of such limitations when prosecuting and presiding over the disciplinary proceedings. Pursuant to IND. CODE § 22-4-17-12(h), however, the findings of the Unemployment Insurance Review Board have no such preclusive effect.

[3] Our review of the Indiana Code reveals that there is no IND. CODE § 4-21.5-3-7(e). However, IND. CODE § 4-21.5-3-31 provides, in part, as follows:

 (a) An agency has jurisdiction to modify a final order under this section before the earlier of the following:

  (1) Thirty (30) days after the agency has served the final order under section 27, 29, or 30 [IC 4-21.5-3-27, IC 4-21.5-3-29, or IC 4-21.5-3-30] of this chapter.

  (2) Another agency assumes jurisdiction over the final order under section 30 [IC 4-21.5-3-30] of this chapter.

Defendant Kelly, Executive Director of the IPLA, presided at the hearing, after which she issued a ruling on May 11, 2010.[4] Plaintiff did not attach a copy of that order to her Third Amended Complaint; however, she alleges that, based on that decision, she was fined, ordered to undergo drug testing, and subjected thereafter to continuous monitoring. She also alleges that, as a result of the administrative decision, prospective employers now assume that she has a problem with substance abuse and withhold employment as a licensed registered nurse. Plaintiff's license was not revoked as a sanction based on the disciplinary findings.

Plaintiff submitted a written request for review of the administrative order, which was set for hearing on July 15, 2010. However, on June 29, 2010, Defendants Wong and Covington sought to have the hearing cancelled because, they said, it did not fit into the schedules of the ISNB, IPLA, or the other Defendants. Plaintiff alleges in her Complaint that Defendants informed her that the setting of the hearing on that date had been a mistake.

---

  (3) A court assumes jurisdiction over the final order under IC 4-21.5-5.

(b) A party may petition the ultimate authority for an agency for a stay of effectiveness of a final order. The ultimate authority or its designee may, before or after the order becomes effective, stay the final order in whole or in part.

(c) A party may petition the ultimate authority for an agency for a rehearing of a final order. The ultimate authority or its designee may grant a petition for rehearing only if the petitioning party demonstrates that:

  (1) The party is not in default under this chapter;

  (2) Newly discovered material evidence exists; and

  (3) The evidence could not, by due diligence, have been discovered and produced at the hearing in the proceeding.

The rehearing may be limited to the issues directly affected by the newly discovered evidence. If the rehearing is conducted by a person other than the ultimate authority, section 29 [IC 4-21.5-3-29] of this chapter applies to review of the order resulting from the rehearing.

[4] It is unclear what role, if any, Defendant Gorman had in the proceedings. The only allegation in Plaintiff's Complaint that is specifically references him is his position as Director of the ISBN.

Plaintiff thereafter sought judicial review of the administrative action on July 28, 2010 in an action docketed in the Marion Superior Court as <u>Ernestine Garza v. Indiana State Board of Licensing/Indiana Professional Licensing Agency</u>, Cause No. 49D13-1007-MI-033238. This action was dismissed on December 20, 2010. Following the filing of this case in our court, we requested a copy of the dismissal order issued by the Marion Superior Court to determine the basis of that dismissal, and discovered that Garza's failure to file the Petition for Judicial Review in a timely manner was the reason.[5] In her Third Amended Complaint, Plaintiff alleges that the Marion Superior Court accepted Defendants' argument that the thirty days for an appeal of the May 11, 2010 order was not tolled by the canceled review hearing.[6] Plaintiff did not appeal the state court's dismissal.

This lawsuit has been brought pursuant to 42 U.S.C. § 1983 alleging that Defendants deprived her of her due process rights to a fair and impartial hearing and an opportunity to fully exhaust her administrative remedies under Indiana law. She also alleges that Defendants deprived her of her Fourteenth Amendment Equal Protection rights. She seeks declaratory and injunctive relief based on the May 11, 2010 order issued by Defendant Kelly, as well as compensatory and punitive damages against each of the Defendants in their individual capacities.[7]

### A. The Court's Subject Matter Jurisdiction

---

[5] We are permitted to take judicial notice of matters of public record, such as the contents of court records, without converting the motion for failure to state a claim into one for summary judgment. See, e.g., <u>GE Capital Corp. v. Lease Resolution Corp.</u>, 128 F.3d 1074, 1080-81 (7th Cir. 1997).

[6] IND. CODE § 4-21.5-3-31(e) states: "An action of a petitioning party or an agency under this section neither tolls the period in which a party may object to a second agency under section 30 of this chapter nor tolls the period in which a party may petition for judicial review under IC 4-21.5-5. However, if a rehearing is granted under subsection (c), these periods are tolled and a new period begins on the date that a new final order is served."

[7] As determined by the magistrate judge assigned to this case, Defendants sued in their official capacities are subject only to prospective injunctive relief. Dkt. No. 28 at 4.

Defendants argue in their Motion to Dismiss that the Court lacks subject matter jurisdiction over Plaintiff's Complaint pursuant to the Rooker-Feldman doctrine, which limits the federal district court's jurisdiction over claims "brought by state-court losers complaining of injuries caused by state court judgments . . . ." Exxon Mobil Corp. V. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). That doctrine precludes a district court from reversing or altering a state court judgment, even if that judgment is erroneous or unconstitutional. Gilbert v. Ill. State Bd. of Educ., 591 F.3d 896, 900 (7th Cir. 2010). However, as the Seventh Circuit has explained, there are limits to the applicability of the doctrine:

> Though a lower federal court may not sit in review over a state court judgment, a federal court is free to entertain claims that are independent of any state court proceedings. See Long v. Shorebank Dev. Corp., 182 F.3d 548, 555 (7th Cir. 1999) (noting that Rooker-Feldman does not bar "a federal claim alleging a prior injury that a state court failed to remedy"). Moreover, because the Rooker-Feldman doctrine is concerned only with state court determinations, it presents no jurisdictional obstacle to judicial review of executive action, including decisions made by state administrative agencies. See Verizon Mary-land, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 644 n.3, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002).

Gilbert, 591 F. 3d at 900.

In Hemmer v. Ind. State Bd. of Animal Health, the Seventh Circuit explained that there is a distinction between a plaintiff who is a true "state court loser" and one who is merely a loser in "state administrative agency proceedings." 532 F.3d 610, 614 (7th Cir. 2008). Finding that the plaintiff in Hemmer was not a "state court loser," the Seventh Circuit noted that the state court did not actually ever review the decision of the state administrative agency due to an error by plaintiff. Id. Because the state court did not review the state administrative agency decision "on its merits," the district court had not been called upon to reverse the state court's decision. Thus, the Rooker-Feldman doctrine did not apply, and the district court had subject matter jurisdiction.

Id.; see also Satkar Hospitality Inc. v. Cook County Bd. of Review, 819 F. Supp. 2d 727 (N.D. Ill. 2011).

As in Hemmer, it is clear that the Marion Superior Court's dismissal of Plaintiff's case was based on its untimeliness, as opposed to a ruling on the merits of her claims. Thus, we have subject matter jurisdiction over Plaintiff's claims because Rooker-Feldman does not apply.

### B. Plaintiff's Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all well-pled factual allegations in the complaint and draws all ensuing inferences in favor of the non-movant. Lake v. Neal, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." Pisciotta v. Old Nat'l Bancorp, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); see Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

As noted above, Plaintiff alleges in her Complaint that Defendants violated her constitutional rights to due process and equal protection. For the reasons detailed below, we conclude that Plaintiff's Complaint fails to state a viable claim under either of these theories.[8]

---

[8] Defendants also argue that Plaintiff's claims fail because Defendants Covington and Wong are entitled to absolute prosecutorial immunity and Defendants Gorman and Kelly are entitled to absolute judicial immunity.

### 1. Plaintiff's Due Process Claim

To state a claim for a procedural due process violation under the Fourteenth and Fifth Amendments and § 1983, a plaintiff must establish: (1) a protected property interest; (2) a deprivation of that property interest by an individual acting under the color of state law; and (3) a denial of due process. Booker-El v. Superintendent, 668 F.3d 896, 900 (7th Cir. 2012) (citing Tenny v. Blagojevich, 659 F.3d 578, 581 (7th Cir. 2011)). In Plaintiff's Response brief, she claims that the protected interest of which she was deprived is her nursing license. However, the record reflects that her license was not revoked as a result of the administrative hearing. Thus, it remains unclear from the allegations in Plaintiff's Complaint precisely what injuries she alleges she suffered as a result of the hearing. She states that the administrative action "impairs her continued right to practice as a nurse with an unrestricted license." Defendants do not dispute, despite this confusion, that Plaintiff has sufficiently alleged the deprivation of a protected interest. Thus, we shall also assume she has sufficiently alleged the first two elements of her claim, to wit, the existence of and the deprivation of a protected property interest.

Defendants contend that Plaintiff's case fails with regard to the third element. Her complaint fails to state a claim for a due process violation because the evidence shows she received all the process she was due. "The bare bones constituents of fair procedure and therefore of due process are (besides jurisdiction) notice and an opportunity to be heard." Smith v. Shettle, 946 F.2d 1250, 1254 (7th Cir. 1991). Indeed, the allegations in Plaintiff's Complaint confirm that she received both: the administrative complaint filed against her informed her of the allegations against her; and the subsequent hearing afforded her the opportunity to "appear[] before the Defendants in order

---

Because we find that Plaintiff has failed to state a claim against these Defendants, we need not consider this alternative argument for dismissal.

to respond to the Administrative Complaint as directed," and to interpose her defense. Compl. ¶ 10(d-e). Following the hearing, the decision was rendered after which Plaintiff sought review of that decision both through administrative procedures as well as the judicial system. That she received an adverse result, does not render the procedures afforded her unfair or incomplete.

Plaintiff maintains that the administrative hearing "fell short of Indiana's requirements for public hearings" as promulgated in 40 IAC 2-3-4. Even if true, "[t]he failure to conform with the procedural requirements guaranteed by state law does not by itself constitute a violation of federal due process." Hudson v. City of Chicago, 374 F.3d 554, 564 (7th Cir. Ill. 2004). Thus, construing all of Plaintiff's allegations in her favor, she has nonetheless failed in her attempt to state a claim for due process violations. These claims therefore are subject to dismissal.

2.      **Plaintiff's Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment protects individuals from governmental discrimination on account of the individuals' race, national origin, or sex. Swanson v. City of Chetek, 719 F. 3d 780, 783 (7th Cir. 2013). "The Clause also prohibits the singling out of a person for different treatment for no rational reason." Id. "To state a class-of-one equal protection claim, an individual must allege that [she] was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Id. (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

Defendants challenge Plaintiff's Complaint on the grounds that it fails to state a claim in that it lacks any allegation that she was treated differently from any other similarly situated individual. Having carefully reviewed the allegations of the Third Amended Complaint, we must agree. Plaintiff's Response is in large part fairly incoherent, containing only brief

references to her equal protection claim. Citing to Tuffendsam v. Dearborn County Board of Health, 385 F.3d 1124 (7th Cir. 2004), Plaintiff asserts that she "may" pursue a class of one equal protection claim on account of her being "singled out by a public official for adverse treatment because of an unsubstantiated claim that she abused drugs." However, she clearly failed to advance such a claim in her Complaint. There is no allegation that Defendants singled her out on account of her race, national origin, or sex and, as Defendants point out, the Seventh Circuit's decision in Tuffendsam would further undermine any attempt by her to pursue a class of one equal protection claim. In that case, the Seventh Circuit explained that the plaintiff in that case was a "victim of uneven enforcement, nothing more;" further:

> The Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all. Otherwise few speeders would have to pay traffic tickets. Selective, incomplete enforcement of the law is the norm in this country.

Id. at 1127-28 (quoting Hameetman v. City of Chicago, 776 F.2d 636, 641 (7th Cir. 1985)). As in Tuffensdsam, to the extent that Plaintiff claims that she was "singled out" for administrative action, her cause of action falls far short.

## Conclusion

For the reasons detailed herein, the Motion to Dismiss filed by the State Defendants is GRANTED and the claims against them are DISMISSED WITH PREJUDICE. Final judgment shall enter accordingly.

IT IS SO ORDERED.

Date: 02/19/2014

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to: Electronically registered counsel of record via ECF